UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
JAMES MALLARD,

        Petitioner,

        v.

UNITED STATES OF AMERICA,

        Respondent.

--------------------------------------------------X

98 CV 7507 (SJ)
95 CR 379 (SJ)


**MEMORANDUM
AND ORDER**

**A P P E A R A N C E S**

JAMES MALLARD, *PRO SE*
1345 Lyman Place, Apt. # 2
Bronx, NY 10459

UNITED STATES ATTORNEY
Benton J. Campbell
271 Cadman Plaza East
Brooklyn, NY 11201
By:    William Campos
       Michael Yaeger
Attorneys for Respondent


JOHNSON, Senior District Judge:

P-049

Before the Court is Petitioner James Mallard's ("Petitioner" or "Mallard") *pro se* petition to vacate his sentence under 28 U.S.C. § 2255 ("Section 2255") (the "Petition"). For the following reasons, the Petition is DENIED in its entirety.

## I.  BACKGROUND

On March 13, 1997, Petitioner pleaded guilty to the first count of a three count indictment, for possessing a stolen bus in violation of 18 U.S.C. § 2313. On June 26, 1997, the Court sentenced Petitioner to 35 months in custody and three years of supervised release, and imposed a $50 special assessment. Mallard appealed and, on August 21, 1998, the Court of Appeals for the Second Circuit affirmed his conviction.

On November 25, 1998, Mallard filed his first petition under Section 2255, alleging that his guilty plea was involuntary and that he had received ineffective assistance of counsel. This petition was assigned docket number 98-cv-7507. The government responded on February 26, 1999 ("Gov't Letter of 2/26/99").

On April 8, 1999, Mallard filed a petition pursuant to 28 U.S.C. § 2241, which was assigned docket number 99-cv-1870, alleging that his Criminal History Category was incorrectly calculated. An additional letter, dated March 12, 1999, was filed under this docket alleging ineffective assistance of counsel for failure to challenge the computation of Mallard's Criminal History Category. In yet another filing, on April 21, 1999, Petitioner supplemented his petition under this docket

number, challenging the validity of his guilty plea. The government responded in a letter dated June 21, 1999 ("Gov't Letter of 6/21/99"). On May 11, 2001, pursuant to a letter from Mallard requesting that this motion be converted to a petition under Section 2255, the Court ordered that the filings under docket number 99-cv-1870 be treated as an amendment to the original Petition under docket number 98-cv-7507.

On August 8, 2005, the Court ordered that Mallard's Petition be denied because of Mallard's subsequent release from custody. Mallard subsequently filed a new petition under Section 2255 (assigned docket number 07-cv-1617) and a motion for a writ of audita querla (assigned docket number 07-cv-2214). On June 15, 2007, the Court ordered that the new Section 2255 petition under docket 07-cv-1617 be denied (because Petitioner was not in custody when it was filed) and construed the motion for a writ of audita querla as a motion for reconsideration of the Court's order of August 8, 2005. The Court then granted the motion for reconsideration and re-opened Mallard's original habeas petition, under docket 98-cv-7507.

On September 29, 2008, Mallard filed a *pro se* motion for resentencing under his criminal docket (95-cr-379), arguing again that his Criminal History Category was improperly calculated. The Government opposed this motion on April 13, 2009 ("Gov't Letter of 4/13/09").

Because Mallard's original habeas petition is still open and because the September 29, 2008 motion contains allegations that relate back to that original filing, the Court treats the September 29, 2008 motion as an amendment to the Petition and has therefore transferred all documents pertaining to this motion to docket 98-cv-7507.[1]


## II.   DISCUSSION

Mallard's allegations throughout these numerous filings amount to essentially three claims: (A) that his guilty plea was taken in violation of Rule 11 of the Federal Rules of Criminal Procedure; (B) that his Criminal History Category was incorrectly calculated; and (C) that he suffered from ineffective assistance of counsel.


### A. Validity of Mallard's Guilty Plea

On March 10, 1997, Petitioner appeared before the Court to plead guilty. (Tr. 3/10/97 at 2.)   At that time, Petitioner expressed confusion about why his prosecution in federal court did not constitute double jeopardy, given that he had previously pleaded guilty to disorderly conduct arising out of the same facts in state

---

[1] Contrary to the Government's contention, this motion is not a successive habeas petition, as the underlying petition was pending at the time the motion was filed.  (Gov't Letter of 4/13/09 at 3-4.) See Littlejohn v. Artuz, 271 F.3d 360, 362-64 (2d Cir. 2001) (per curiam) (holding that "before a motion or petition can be regarded as successive, there must be some prior adjudication on the merits or dismissal with prejudice."); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 816 (2d Cir. 2000) (concluding that Fed. R. Civ. P. 15(c) applies to habeas petitions under Section 2255 and 28 U.S.C. § 2244).

4

court. (Id. at 4-5.) Both the Court and defense counsel explained the dual sovereignty doctrine to Petitioner, however, the Court refused to take his plea on that day, concluding that Petitioner should have "another session with [his] attorney." (Id. at 6.) As the parties discussed a date for the next appearance, Petitioner had an epileptic seizure. (Id.) On March 13, 1997, Petitioner re-appeared before the Court and pleaded guilty.

Mallard advances several arguments to support his claim that his guilty plea was taken in violation of Rule 11 of the Federal Rules of Criminal Procedure ("Rule 11") and was not voluntary or knowing. All of Mallard's challenges to the validity of his guilty plea are procedurally barred due to Mallard's failure to raise them on direct appeal.

1. Procedural Bar

Relief under Section 2255 "is an extraordinary remedy," not a substitute for a direct appeal. See Bousley v. United States, 523 U.S. 614, 621 (1998). As a result, claims made under Section 2255 that were not raised on direct appeal are procedurally barred by default. See id. at 621-22; Campino v. United States, 968 F.2d 187, 190 (2d Cir. 1992). Procedural default "is particularly appropriate where, as here, the [petitioner] pled guilty" because of the heightened concern for finality. Rosario v. United States, 164 F.3d 729, 732 (2d Cir. 1998) (citing United States v. Timmreck, 441 U.S. 780, 784 (1979)). All of Mallard's arguments that his plea

was invalid are procedurally barred because they were not raised on Mallard's direct appeal. See Bousley, 523 U.S. at 621 ("[E]ven the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review.").

A habeas petitioner who has defaulted in this way can avoid the procedural bar only if he "can first demonstrate either cause and actual prejudice or that he is actually innocent." Id. at 622 (internal citations and quotation marks omitted). To demonstrate cause for failure to raise a Section 2255 claim on direct appeal, a petitioner must show that "some objective factor external to the defense" prevented him from raising the claim on appeal, such as the factual or legal basis for the argument not being available at the time of appeal, or interference by officials. See Murray v. Carrier, 477 U.S. 478, 488 (1986). An allegation that an attorney erred in failing to raise a claim on appeal will only constitute cause where the attorney's conduct rose to the level of ineffective assistance of counsel, under the test laid out in Strickland v. Washington, 466 U.S. 668 (1984). See Murray, 477 U.S. at 488 (holding that the petitioner bears "the risk of attorney error" that does not rise to this level). Moreover, to show prejudice, a petitioner must show "actual and substantial disadvantage," not merely the possibility of prejudice. Id. (quoting United States v. Frady, 456 U.S. 152, 170 (1980) (emphasis in original)). Finally, to show actual innocence, a petitioner must show "factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623.

Mallard argues that he discussed appealing the validity of his plea with his first appeal counsel (who was later relieved due to a conflict of interest), believed that his second appeal counsel would raise all of the issues that he had discussed with his first appeal counsel, and "inquired about ineffective assistance of counsel" when he saw that the appeal that she had filed did not contain all of these issues. (See Mallard Reply of 3/12/99 at 4.) Construing this argument liberally, as the Court must given Mallard's *pro se* status, see Williams v. Kullman, 722 F.2d 1048, 1050 (2d Cir. 1983), the Court understands Mallard to be arguing that his appeal counsel was ineffective in failing to raise these claims and, therefore, that he has shown cause for failure to raise these issues on direct appeal. It is well-established, however, that "[t]he failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which Petitioner was entitled." Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001) (internal quotation marks omitted); see also Duarte v. United States, 289 F. Supp. 2d 487, 491-92 (S.D.N.Y. 2003). As discussed infra, Mallard's arguments concerning the validity of his plea are meritless, therefore his appeal lawyer's failure to raise them on appeal does not constitute ineffective assistance of counsel and Mallard has not established cause to excuse this procedural default. See Murray, 477 U.S. at 488. In addition, Mallard has made absolutely no showing of prejudice, nor has he argued, in any of his numerous filings currently before the Court, that he is actually innocent.

## 2. Validity of Mallard's Guilty Plea

Even if they were not procedurally barred, Mallard's arguments concerning the validity of his guilty plea would also fail on the merits. Mallard first argues that, at his allocution, the Court did not inform Mallard of his right against compelled self-incrimination, violating Rule 11. District courts are required to specifically inform defendants "of each and every element enumerated in Rule 11." United States v. Journet, 544 F.2d 633, 634 (2d Cir. 1976). But when a defendant chooses to challenge the validity of his plea under Section 2255, rather than on direct appeal, he must do more than simply point to a technical violation of Rule 11. See Lucas v. United States, 963 F.2d 8, 14 (2d Cir. 1992) (holding that there is a different standard for a violation of Rule 11 alleged under Section 2255 than on direct appeal, as "[i]t has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment.") (quoting United States v. Addonizio, 442 U.S. 178, 184 (1979)). A petitioner can successfully challenge the validity of a plea under Section 2255

> only by establishing that the violation constituted a constitutional or jurisdictional error, or by showing that the error resulted in a complete miscarriage of justice or in a proceeding inconsistent with the rudimentary demands of fair procedure. The movant should also demonstrate that he was prejudiced by the violation because he did not understand the consequences of his plea, or that, if he has been properly advised, he would not have pled guilty.

Id. at 12-13 (internal quotations marks and citations omitted). Mallard has not argued that he suffered any prejudice from this alleged violation of Rule 11; he

"does not argue that he was actually unaware of [the right against compelled self-incrimination] or that, if he had been properly advised by the trial judge, he would not have pleaded guilty. His only claim is of a technical violation of [Rule 11]." Timmreck, 441 U.S. at 784.

Mallard's second argument, that the Court failed to inquire into the effects of his medication, is contradicted by the transcript of Mallard's plea. When Petitioner appeared before this Court to plead guilty on March 13, 1997, the Court inquired at length about Petitioner's health and ability to plead, given Petitioner's epileptic seizure at his previous appearance three days earlier.

> The Court: The last time we were here we had to take you to the hospital, Mr. Mallard?
> The Defendant: Yes, sir.
> The Court: How do you feel now?
> The Defendant: I'm hanging in there.
> The Court: What does that mean?
> [Defense Counsel]: Judge, Mr. Mallard has told me that he had his Dilantin this morning, that we hope will take care of the seizure disorder . . . There are side effects of Dilantin . . . [s]ometimes it does slow down your thinking a little bit, sometimes. Mr. Mallard avoids taking the Dilantin to avoid the side effects, however, I have gone over the details of the case with him this morning and it's apparent to me that he has comprehension and Mr. Mallard says he does.
> The Court: As I said before, Mr. Mallard, that in order for me to accept any plea of guilty I must be convinced that you understand the nature of the charges and the consequences of your action, therefore, I'm going to be asking you to [sic] questions and I'm just super conscious of the fact that you had a physical condition the last time that we were here and you went to the hospital and that's why I ask you how do you feel now and when you say hanging in, I wanted to know what that means.

9

(Tr. 3/13/97 at 2-3.) The Court was entitled to rely on defense counsel's assurances that Mallard's medication was not affecting his ability to enter a knowing and voluntary plea. See United States v. Campbell, No. 95-1683, 1998 WL 613790 (2d Cir. Apr. 16, 1998) (summary order).

In addition, however, the Court also questioned Mallard himself, under oath, on this point:

> The Court: Are you currently under the influence of any drug, medication or alcoholic beverage of any kind?
> The Defendant: No.
> The Court: Do you take Dilantin?
> The Defendant: Yes.
> The Court: When was the last time you took Dilantin?
> The Defendant: This morning.
> The Court: What time was that?
> The Defendant: About 7:00, 7:30.
> The Court: It's now 12:30. Your faculties, are they all right?
> The Defendant: Yes.
> The Court: You understand the nature of the proceeding?
> The Defendant: Yes.

(Tr. 3/13/97 at 5-6.) Contrary to Mallard's allegations, therefore, the Court made a clear, on-the-record determination that Mallard was under the influence of medication, but that that medication did not affect Mallard's ability to voluntarily and knowingly plead guilty. See United States v. Rossillo, 853 F.2d 1062, 1065-67 (2d Cir. 1988) (vacating and remanding where the district court made no on-the-record determination whether the defendant had taken medication and did not explore whether his plea was nevertheless voluntary and knowing). The Court also considered that Mallard had expressed his intent to plead guilty at the earlier

10

proceedings on March 10, 1997, when he was not under the effect of any medication. (See Tr. 3/10/97 at 2.)

Mallard's third argument, that the Court coerced him into pleading guilty, is likewise belied by the record, the context surrounding the Court's remarks, and Mallard's own sworn testimony at the allocution. The Court told Mallard, on March 3, 1997, that if he sought to retain a new lawyer at that late stage in the proceedings, that new lawyer would "come in with his feet hitting the ground . . . If your lawyer wants to come in and delay, I won't stand for it." (Tr. 3/3/97 at 5.) These remarks were made in the context of Mallard's suggestion that he might retain a different lawyer and, as the Court of Appeals found when it discussed these remarks on Mallard's direct appeal, these remarks were not coercive. See United States v. Mallard, No. 97-1398, 1998 WL 650818, at *2 (2d Cir. Aug. 21, 1998) (concluding that "[t]he district court was responding to Mallard's suggestion that the proceedings might need to be delayed because his prospective attorney was engaged in another trial. It was not attempting to coerce Mallard into accepting a conflict-tainted counsel."). It is equally clear that these remarks were not intended to coerce Mallard into pleading guilty and that they did not, in fact, coerce his plea. When asked under oath whether any threats had been made to induce him to sign his plea agreement, Mallard answered: "No threats." (Tr. 3/13/97 at 9.) Mallard's sworn statements at his plea allocution "carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Hernandez,

11

242 F.3d 110, 112 (2d Cir. 2001) (holding that the court may rely on sworn statements at plea allocution); <u>Vargas v. United States</u>, No. 00-CV-2275, 2007 WL 2246004, at *7 (E.D.N.Y. Jul. 31, 2007) (Johnson, J.) ("In reviewing a habeas petition, a district court is entitled to rely upon a petitioner's statements, made under oath and in open court at the time his plea is accepted.").

Mallard's fourth argument, that the Court did not establish that he understood the nature of the offense to which he was pleading and that the Court did not establish that there was a factual basis for the plea, is also contradicted by the transcript of the allocution. Mallard expressed confusion about the double jeopardy doctrine when he first appeared to plead guilty on March 10, 1997. (Tr. 3/10/97 at 4-5.) Both the Court and defense counsel explained to Mallard, however, that his prosecution was not barred by double jeopardy because of the dual sovereignty doctrine. (<u>Id.</u>) Nevertheless, precisely in order to ensure that Mallard fully understood the consequences of pleading guilty, the Court refused to accept Mallard's plea that day, granting Mallard additional time to consult with his attorney on this point. (<u>Id.</u> at 6.) Mallard subsequently appeared on March 13, 1997 when he pleaded guilty. At no time during these proceedings did Mallard raise the double jeopardy issue or indicate any other lack of understanding of the process.

Under oath, Mallard told the Court that he had received a copy of the indictment and discussed it with his lawyer and that he understood the potential

sentence he was facing; he also described his offense in his own words. (Tr. of 3/13/97 at 6-8, 10-11.) Mallard's conclusory allegations are insufficient to rebut these sworn statements. See United States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001) (holding that allocution "testimony carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made."); Hernandez, 242 F.3d at 112. Moreover, Mallard's admission to the facts alleged in the indictment provided a sufficient factual basis for the Court to accept his guilty plea. See Juncal, 245 F.3d at 171; United States v. O'Hara, 960 F.2d 11, 13 (2d Cir. 1992).

All of Mallard's arguments challenging the validity of his guilty plea are therefore rejected.

## B. Computation of Mallard's Criminal History Category

Mallard next alleges that the Court incorrectly calculated his Criminal History category by awarding him Criminal History points for three driving-while-impaired ("DWI") convictions sustained in North Carolina prior to sentencing before this Court. The first DWI conviction, sustained in 1993 ("First DWI") resulted in two Criminal History points and two additional points were added because Mallard committed the instant offense while on probation for the First DWI conviction. (Pre-sentence investigation report ("PSR") ¶¶ 38, 45.) The

13

second DWI, sustained in 1994 ("Second DWI"), included a charge for driving with a revoked license and resulted in one Criminal History point. (PSR ¶ 42.) The third DWI, sustained in 1995 ("Third DWI"), also included a charge for driving with a revoked license and resulted in two Criminal History points. (PSR ¶ 39.)

Mallard's argument concerning these convictions varies confusingly and inconsistently throughout his numerous submissions to the Court. Mallard has argued that he never served any term of imprisonment on the North Carolina charges (and, similarly, that these charges were still pending at the time of his sentencing before this Court), therefore they should not have counted towards his Criminal History Category. Mallard has also contradictorily argued, however, that he pled guilty to these charges, but that they were brought solely to harass him for his participation in the civil rights movement forty years ago. Finally, Mallard has also argued that these convictions should not have counted towards his Criminal History Category because they were uncounseled misdemeanors.

1. Procedural Bar

As an initial matter, Mallard's arguments concerning the computation of his Criminal History Category are, like his arguments concerning the validity of his plea, procedurally barred because he did not raise them on direct appeal. See Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) ("Insofar as claims

14

regarding a sentencing court's error in failing to properly apply the Sentencing Guidelines are neither constitutional nor jurisdictional . . . absent a complete miscarriage of justice, such claims will not be considered on a § 2255 motion where the defendant failed to raise them on appeal."). Mallard's allegations do not rise to the level of a complete miscarriage of justice because they also fail on the merits.

### 2. Effect of the DWI Convictions on Mallard's Criminal History

#### a. Proof of DWI Convictions

Mallard's argument that he had no DWI convictions is clearly contradicted by the record. Prior to sentencing, Mallard's defense counsel (Peter Kirchheimer) objected to the PSR's computation of Mallard's Criminal History. In particular, he contested the four Criminal History points resulting from the First DWI conviction, arguing that the PSR did not reflect the precise disposition and that Mallard's unsupervised probation should not result in two additional points. (Def. Letter of 6/4/97.) As a result of these objections, the Court obtained the North Carolina Judgment and Commitment notice for the First DWI, which confirmed that Mallard had pleaded guilty to Driving While Impaired. (See Tr. 6/27/97 at 10; Ex. A to Gov't Letter of 5/12/09.) While Mallard's sentence of sixty days for the First DWI was suspended in favor of probation, his probation was revoked for failure to

15

complete his community service and he was subsequently sentenced to sixty days imprisonment. (PSR ¶ 38.)

With respect to the Second and Third DWI convictions, the Government provided the Court with a notice from the Clerk of Superior Court, Pitt County, North Carolina, indicating that records for these cases have been purged or destroyed. (See Ex. A to Gov't Letter of 5/12/09.) Printouts from the Pitt County Court's database do, however, reflect guilty verdicts for Mallard under both docket numbers, resulting in sentences of six months (on June 8, 1994)[2] and 181 days (on March 29, 1995). It is clear, therefore, that Mallard was convicted of three DWI offenses prior to his sentencing before this Court and, therefore, that these offenses could be considered in the calculation of his Criminal History Category. See U.S.S.G. § 4A1.1.

     b. <u>Uncounseled Misdemeanor Sentences and Criminal History Computation</u>

Mallard's second (and contradictory) argument, that these convictions should not have counted towards his Criminal History because they were uncounseled, is also without merit.

The Guidelines specify that "[p]rior sentences, not otherwise excluded, are to be counted in the criminal history score, including uncounseled misdemeanor

---

[2] The PSR reflects a conviction on 8/4/94 and a sentence of 48 hours. This discrepancy does not affect the Court's decision.

P-049

sentences where imprisonment was not imposed." U.S.S.G. § 4A1.2 (emphasis added). The Second Circuit has held that uncounseled misdemeanor sentences of probation may be used to increase a Criminal History score. See United States v. Castro-Vega, 945 F.2d 496, 499-500 (2d Cir. 1991). Uncounseled misdemeanor sentences of imprisonment, however, cannot be counted in Criminal History calculations. See United States v. Ortega, 94 F.3d 764, 771 (2d Cir. 1996).

Documents submitted by Mallard himself indicate that Mallard was represented by counsel for the Second and Third DWI convictions. (See Ex. 3 to Gov't Letter of 6/21/99.) Among these documents is a minute-entry adjourning the case of the Second DWI because defense counsel was on vacation and a fee application for services rendered by a court-appointed attorney in the case of the Third DWI. (Id.) Because these sentences were counseled, they were properly included in the calculation of Mallard's Criminal History.

With respect to the First DWI conviction, however, the Judgment and Commitment notice reflects that Mallard waived his right to counsel. It therefore appears that the First DWI conviction was uncounseled. Mallard's PSR assessed two Criminal History points for the First DWI conviction because, following the revocation of his probation, Mallard ultimately served sixty days imprisonment for this conviction. See U.S.S.G. § 4A1.1(b) ("Add 2 points for each prior sentence of imprisonment of at least sixty days"); id. at § 4A1.2(k)(1); PSR ¶ 38. In light of the fact that the First DWI conviction was uncounseled, however, two points should

17

not have been added for the sixty day sentence.  See Ortega, 94 F.3d at 770-71.

It would, however, have been constitutional to assess one Criminal History point for the underlying misdemeanor conviction that resulted in probation.  See U.S.S.G. § 4A1.1(c) ("Add one point for each prior sentence not counted in (a) or (b)").  Thus, in United States v. Boots, 314 F. Supp. 2d 141, 144-45 (N.D.N.Y. 2004), the defendant received one Criminal History point for a misdemeanor for which she initially received a sentence of probation, but was subsequently sentenced to 180 days imprisonment after her probation was revoked.  Id. at 143.  She received two additional Criminal History points for committing the offense before that court while on probation for the misdemeanor.  Id.  Boots challenged the computation of her Criminal History Category under Ortega, but the court distinguished Ortega reasoning that, in Ortega, the underlying conviction would not have received any Criminal History points if the sentence imposed following revocation of probation had not been considered.  Id. at 144 ("In Ortega, had defendant not violated his probation, the underlying state court offense would not have been counted in the computation of his federal criminal history category because disorderly conduct is among those excluded offenses listed by U.S.S.G. § 4A1.2(c)(1).").  The Boots court awarded one point under U.S.S.G. § 4A1.1(c), reasoning that Ortega does not prevent adding a Criminal History point "when a misdemeanor defendant is sentenced to a term of probation and no jail term is imposed."  Id. at 145; see also Castro-Vega, 945 F.2d at 500.

P-049

Mallard, like Boots, originally received only a sentence of probation for the First DWI conviction. Like Boots, he was only sentenced to imprisonment after his probation was revoked. Like Boots, therefore, Mallard should have been assessed one Criminal History point under U.S.S.G. § 4A1.1(c) for the underlying conviction, rather than the two points he actually received under U.S.S.G. § 4A1.1(b) for the unconstitutional sentence imposed after revocation. Like Boots, Mallard could also properly be assessed two additional points for committing the instant offense while on probation for the First DWI. U.S.S.G. § 4A1.1(d); PSR ¶ 45. Correctly calculated, therefore, Mallard should have been assessed a total of seven Criminal History points rather than eight.

As the Government points out, however, even with seven Criminal History points, Mallard's Criminal History Category would have remained Category IV. (Gov't Letter of 6/21/99 at 5-6.) The error in calculating Mallard's Criminal History Category was, therefore, harmless.

c. Additional Criminal History Computation Arguments

Most recently, Mallard has also argued that the Second and Third DWIs should not have been counted in computing his Criminal History Category because he had appealed them and the appeals were still pending at the time of his sentencing before this Court. (Pet. Letter of 5/30/09.) Mallard has submitted no evidence to support these allegations. Even if Mallard's allegations are true,

19

however, the Guidelines explicitly provide that "[p]rior sentences under appeal are counted" except in certain enumerated exceptions, none of which apply. U.S.S.G. § 4A1.2(l); see, e.g., United States v. Austin, 276 Fed. Appx. 736, 738 (10th Cir. 2008). This argument is, therefore, without merit.

Mallard also briefly argues that his sentences for the DWI convictions exceeded the statutory maximum permissible under North Carolina law. Such a claim is not properly before this Court in a Section 2255 petition. See Daniels v. United States, 532 U.S. 374, 382 (2001) (holding that "[t]he presumption of validity that attached to the prior [state] conviction at the time of sentencing is conclusive, and the defendant may not collaterally attack his prior conviction through a motion under § 2255."); Jeremiah v. United States, No. Civ. 3575, 2007 WL 2915183, at *1 (S.D.N.Y. Oct. 4, 2007) (holding that Section 2255 is not the appropriate vehicle with which to challenge the validity of state convictions used to compute defendant's Criminal History Category).

C. Effectiveness of Mallard's Trial Counsel

Mallard's third claim, alleging ineffective assistance of his trial counsel, is not barred by procedural default. See Massaro v. United States, 538 U.S. 500, 504 (2003) (holding that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.").

To show ineffective assistance of counsel, a petitioner must show that the attorney's conduct was deficient and that that deficient performance resulted in prejudice. See Strickland, 466 U.S. at 687. An attorney's conduct is deficient only where a petitioner can overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. To show that that deficiency caused prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

1.  Double Jeopardy

Mallard's first argument, that his lawyer incorrectly explained the double jeopardy standard to him, is not supported by the record. As discussed supra, Mallard gave no indication on March 13, 1997 that he had any remaining confusion over the double jeopardy doctrine.

Even if Mr. Kirchheimer failed to explain double jeopardy to Mallard, however, this claim would still fail under Strickland because Mallard has not shown that he suffered any prejudice from this alleged failure. Under the dual sovereignty doctrine, Mallard could be prosecuted in both state and federal court for the same offense. See Heath v. Alabama, 474 U.S. 82, 88 (1985) ("The dual sovereignty doctrine, as originally articulated and consistently applied by this Court, compels the conclusion that successive prosecutions by two States for the

21

same conduct are not barred by the Double Jeopardy Clause."); United States v. Sewell, 252 F.3d 647, 651 (2d Cir. 2001) ("[Defendant's] double jeopardy challenge is without merit because his successive prosecutions involved separate sovereign — New York State and the United States."); United States v. Vazquez, 145 F.3d 74, 84 (2d Cir. 1998) ("The dual sovereignty doctrine allows the state and federal governments to prosecute someone successively for the same criminal acts without violating double jeopardy.").

### 2. Criminal History Computation

Mallard's second argument, that his lawyer failed to challenge his Criminal History computation, also fails under Strickland. Contrary to Mallard's allegations, Mr. Kirchheimer did challenge the Criminal History calculation, both in a letter submitted prior to the sentencing and on the record on the day of sentencing. (See Def. Letter of 6/4/97; Tr. 6/26/97 at 3-9.) Although the Court ultimately rejected Mr. Kirchheimer's arguments, those objections did cause the Court to inquire further into the First DWI conviction. (Tr. 6/26/97 at 10.)

Furthermore, even if Mr. Kirchheimer had argued that the First DWI conviction should count for one point instead of two points, because it was uncounseled, Mallard would have remained in Criminal History Category IV. As a result, Mallard has again failed to satisfy the second prong of the Strickland analysis, because he has not shown that he suffered any prejudice. See Strickland,

22

466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.").

## III.   CONCLUSION

All of Mallard's other claims are similarly without merit.

While the Court has indulged Mallard by entertaining numerous filings and treating all of them as amendments to the initial Petition, any future submission challenging Mallard's conviction and sentence on these same grounds must be deemed a successive habeas petition. To file a successive habeas petition, Mallard must first receive permission from the Second Circuit Court of Appeals. See 28 U.S.C. § 2255(h); 28 U.S.C. § 2244(b)(3).

For the foregoing reasons, the Petition is DENIED in its entirety. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c). The Clerk of Court is directed to close this case.

SO ORDERED.

/s/(SJ)

DATED:     June 23, 2009
           Brooklyn, New York         Sterling Johnson, Jr., U.S.D.J.

P-049